Tami Chantal Avey
91-1081 Hoomaliu St
Kapolei, HI 96707
Ph.: (808) 773-3477

Plaintiff Pro Se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
18 Jan. 2023 9:42 AM lrs
John A. Mannle, Clerk of Court

PD

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | | |
|---|---|---|
| TAMI AVEY, | * | CIVIL ACTION NO: **23-00025-LEK-KJM** |
| *Plaintiff,* | * | |
| | * | SECTION |
| VERSUS | * | |
| | * | JUDGE |
| CLEARBRIDGE TECHNOLOGY GROUP, | * | |
| LLC AND OPTUM SERVE – UNITED | * | MAGISTRATE JUDGE |
| HEALTH GROUP | * | |
| *Defendants* | * | JURY TRIAL DEMANDED |

* * * * * * * * * * * * * * * * * * * * * * * *

### COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Tami Avey, Plaintiff herein, who respectfully alleges and avers the following:

1.

Plaintiff, Tami Avey (hereinafter "Ms. Avey" or "Plaintiff"), is an African- American female who is beyond the age of 40, has the requisite mental capacity to bring this lawsuit, and is domiciled in the County of Honolulu, Hawaii.

2.

Made a defendant herein is Clearbridge Technology Group LLC (hereinafter "Clearbridge" or "Defendant") a foreign limited liability company with its principal place of business in Alpharetta, Georgia and Billerica, Massachusetts and has and is doing business nationally as a technology consulting and staffing services company. At all times relevant to this lawsuit, Defendant, Clearbridge, was Plaintiff's employer.

3.

Also made a defendant herein is Optum Serve-United Health Group, (hereinafter "Optum Serve" and "Defendant") a subsidiary of UnitedHealth Group, a foreign company with its principal place of business in Columbia, MD and has and is doing business nationally creating and managing health care programs for federal agencies. At all times relevant to this lawsuit, Defendant, Optum Serve, was responsible for supervising and evaluating the Plaintiff's job performance on behalf of Clearbridge.

4.

Venue is proper in this Court because the violations of federal and state laws upon which this Complaint is based occurred while Plaintiff, who was contracted to work remotely from the forum state, was a resident of the forum state and performed all of her job duties and responsibility while working from her home located within the forum state and was supplied with the means to perform her job duties and responsibilities while residing in the forum state.

## FACTUAL BACKGROUND

5.

On or about October 30, 2020, Tami Avey entered into an employment agreement with Clearbridge as a Senior Health IT Lead to work for Defendant Optum Serve as a Regional Manager on a project called Operation Warp Speed.

6.

Operation Warp Speed is a collaborative effort led by the Department of Health and Human Services (DHHS) and the Department of Defense (DOD) to develop, manufacture and deliver safe and effective COVID-19 vaccines to Americans.

2

7.

To assist with the administration of COVID-19 vaccines, DHHS contracted with

Defendant Optum Serve, a healthcare management company, to present, employ, implement and

monitor a new healthcare IT software called Tiberius. Tiberius was designed to provide

"visibility" of the operational efforts/phases within Operation Warp Speed – from manufacturing

to the delivery of COVID-19 vaccines.

8.

To assist it with managing the implementation of Tiberius, Optum Serve contracted with

Clearbridge to provide it with individuals with extensive health care and management experience

to function as Regional Managers for the Operation Warp Speed project.

9.

As mentioned above, Ms. Avey, via her employment agreement with Clearbridge,

became a Regional Manager for Optum Serve.  Her employment as Regional Manager began on

November 3, 2020.

10.

As a Regional Manager, Ms. Avey was responsible for supervising a team of

approximately 15 individuals tasked with working with DOD liaisons for the "real time"

implementation and monitoring of Tiberius.

11.

Ms. Avey's team was responsible for the implementation of Tiberius in Operation Warp

Speed Regions 9 and 10.  Region 9 included Arizona, Hawaii, California, Nevada, Guam, Palau,

North Mariana Islands, Micronesia, the Marshall Islands and American Samoa.  Region 10

3

included Oregon, Washington, Alaska and Idaho.  As noted above, Ms. Avey worked remotely from her residence in Honolulu, Hawaii.

12.

While working as Optum Serve's Regional Manager for Regions 9 and 10, Ms. Avey was in regular contact with her Clearbridge recruiters, Arthur Behrman and Kevin Latraverse. She kept Behrman and Latraverse "in the loop" verbally and in writing, regarding her successes and concerns as a manager.

13.

Regarding her employment as Regional Manager, Ms. Avey reported directly to Optum Serve's Program Manager for Operation Warp Speed, Tim Hunt, and Hunt's Deputy Director, Robert Burks.

14.

However, when tasked with "actually" installing, implementing and monitoring Tiberius with the various healthcare agencies located in Regions 9 and 10, Ms. Avey was required to work directly with the DOD liaisons assigned to those regions. Significantly, the DOD liaison assigned to Region 10 was Colonel Sonmez.

15.

Not surprisingly, because Ms. Avey was responsible for overseeing the installation, implementation and monitoring of Tiberius with healthcare agencies located in 14 different states, in the midst of a pandemic, her workload was overwhelming.  To meet the challenges involved in monitoring the production and delivery of a vaccine via a newly created healthcare IT program, Ms. Avey created a Team Lead position in regions 9 and 10 and trained "high-performing" individuals that were a part of her regional teams to assist her with her workload.

16.

Significantly, Ms. Avery selected Christina Nguyen to fill the Team Lead position for Region 10. Not surprisingly, persons occupying the team lead positions were required to report to Ms. Avey and to keep her "in the loop" of all activities within their respective regions.

17.

As noted above, Ms. Avey began her employment as a Regional Manager for Optum Serve in November 2020.  Interestingly and upon information and belief, because Ms. Avey worked remotely and communicated with her direct reports, DOD liaisons and team members via telephone and email, many of her colleagues, including Colonel Sonmez, did not know that she was a black female.

18.

To that end, from November, 2020 until and through mid-January 2021, prior to Colonel Sonmez and members of her regional team realizing that she was African American, Ms. Avey had no notable concerns while working with DOD liaisons and her regional team members.

19.

In fact, from November, 2020 through mid-January 2021, when communicating her employment concerns with Behrman and Latraverse, Ms. Avey's concerns involved normal and expected workplace matters arising from the circumstances and consequence associated with "rolling out" a highly anticipated healthcare program responsible for monitoring the delivery of vaccines to Americans in 14 different states.

20.

Additionally, from November, 2020 through mid-January, 2021, when communicating with her direct reports, Hunt and Burks, Ms. Avey routinely received positive and encouraging

feedback regarding her job performance particularly regarding her ability to interact with DHHS and DOD personnel and her ability to lead the members of Regions 9 and 10 remotely while under an enormous amount of pressure to provide the means to monitor the distribution of COVID-19 vaccine.

21.

However, on or about January 15, 2021, when Ms. Avey encouraged members of her regional team to participate in activities commemorating the life and legacy of Dr. Martin Luther King, Jr., via video conferencing, Ms. Avey's ability to work with DOD liaison Colonel Sonmez and manage her regional team members, particularly Region10, changed dramatically.

22.

First, without any provocation or reasonable justification, Colonel Sonmez stopped communicating with Ms. Avey.  He failed and/or refused to respond to Ms. Avey's messages, delivered verbally or via electronic means, regarding the implementation of Tiberius.

23.

Second, instead of communicating with Ms. Avey regarding "best" means and methods to use in deploying Tiberius, Colonel Sonmez began communicating exclusively with Ms. Avey's Team Lead, Nguyen.

24.

Third, Colonel Sonmez failed and refused to introduce Ms. Avey to his eventual replacement, John Duffy, giving a clear indication that he wanted DOD personnel to completely ignore Optum Serve's African American Regional Manager.

25.

Fourth, to add insult to injury, Ms. Avey's team lead, Nguyen, stopped informing Ms. Avey about her discussions with Colonel Sonmez and/or matters affecting Region10.  Nguyen no longer informed Ms. Avey about Region10 meetings nor would she forward meeting notes to Ms. Avey.

26.

Feeling empowered by Colonel Sonmez, Nguyen, without authorization, began interacting with Region10 members as if she were the Regional Manager.  Nguyen began assigning various task to Region10 members, answering and/or addressing member concerns and arranging meetings and conferences between her and Region10 members and various stakeholders, without the knowledge or permission of Ms. Avey.

27.

Upon information and belief, not long after it became apparent that Ms. Avey had been marginalized, Region10 members no longer felt constrained to openly discuss their internal thoughts and questions about African Americans and African American culture.  Nothing was off-limits.

28.

Region10 members began discussing matters ranging from Ms. Avey's hairstyle to inquiring about her employment as Regional Manager as if to suggest that some form of affirmative action was at play regarding her employment.

29.

In an effort to put an end to or, at the very least, "curb" her unlawful treatment, beginning in late January and early February, Ms. Avey began informing Behrman and Latraverse and Hunt and Burks, both verbally and via email, about the nearly complete reversal in Colonel Sonmez's interaction with her and corresponding mistreatment she began receiving from Nguyen and members of Region10.

30.

Importantly, though Ms. Avey interacted, communicated and managed Region9 and 10 nearly identically, only Region10's DOD liaison and team members, namely Nguyen, failed and/or refused to judge her by her ability to perform her assigned tasks. Instead, Colonel Sonmez, Nguyen and others judged her by the color of her skin.  In fact, several Region10 members openly discussed ways to get Ms. Avey terminated.

31.

Though Ms. Avey repeatedly informed Defendants' representatives, verbally and via electronic means, about her unlawful mistreatment, instead engaging in conduct to improve the terms and conditions of Ms. Avey's employment, Defendants sat idly by and watched Ms. Avey's workplace environment worsen.

32.

Incredibly, Hunt and Burks refused to engage in discussions and activities to put an end to Colonel Sunmez's unlawful treatment of Ms. Avey.  Rather than attempt to alter his behavior, they made excuses.  Hunt and Burks, with full knowledge of the unlawfulness of Ms. Avey's treatment, informed Ms. Avey that Colonel Sunmmez's can behave how he pleases because he is a Colonel.

8

33.

Nevertheless, after complaining about being excluded from DOD and Region10 team meetings, Colonel Sunmez invited her to a meeting that took place on or about March 29, 2021. During the meeting, Colonel Sunmez made it unmistakably clear that he did not want to work with Ms. Avey as Region10's Regional Manager.  To Colonel Sunmez, Ms. Avey and her opinions did not matter. She was invisible.

34.

Consequently, because Defendants' representatives failed and refused to do anything to alter the terms and conditions of Ms. Avey's workplace environment, instead of engaging in more discussions with Behrman and Latraverse and Hunt and Burks, on or about March 30, 2021, Ms. Avey filed a grievance with Behrman and Latraverse and Hunt and Burks to address her mistreatment.

35.

Incredibly, three (3) hours after filing the above-mentioned grievance, Defendants' terminated Ms. Avey's computer access and eventually terminated her employment.

36.

Plaintiff's claims are based upon the Civil Rights Act of 1886, as amended, 42 U.S.C. §1981 (1994), *et. seq.*

37.

Defendant has engaged in actions and practices constituting violations of the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 (1994), *et seq.* including, but not limited to, subjecting Plaintiff to intentional race-based employment discrimination and retaliation.

38.

At all times relevant herein, Defendants were and remain liable for the conduct of their managers, employees and/or agents, under the doctrine of Respondeat Superior, as all of the conduct alleged herein occurred in the course and scope of such managers', employees' and/or agents' respective work duties.

39.

Upon information and belief, all of the actions complained of herein were made with malice and/or reckless indifference to Ms. Avey's protected rights.

40.

As an African-American, Plaintiff is a member of a protected class based on her race.

41.

Plaintiff was fully qualified for the position of Regional Manager, as demonstrated by the factual allegations set forth herein.

42.

Plaintiff suffered adverse employment actions including but not limited to ultimately being terminated from her employment with Defendants in retaliation for opposing workplace discrimination.

43.

As a result of the unlawful actions described above, Defendants are liable unto Ms. Avey for damages, including back pay and front pay; lost benefits; mental anguish; humiliation and embarrassment; loss of reputation; loss of enjoyment of life; foreseeable and unforeseeable damages, compensatory damages; punitive damages; prejudgment interest; attorney's fees and all costs of these proceedings.

44.

Plaintiff is entitled to extraordinary, nonpecuniary damages because Defendants intended, through its agents' egregious conduct toward Plaintiff, to offend and aggrieve Plaintiff's feelings.

**JURY DEMAND**

45.

Plaintiff demands trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff, Tami Avey, prays that Defendants, be duly cited and required to appear and answer Plaintiff's Complaint and Jury Demand and, after due proceedings had and legal delays, there be judgment rendered herein in favor of Plaintiff and against Defendant as detailed in the foregoing Complaint for Damages and Jury Demand, in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, attorneys' fees and for any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

*Tami Chantal Avey* Author, CpCo, CER 1419, CPC, MA

Tami Chantal Avey

91-1081 Hoomaliu St
Kapolei, HI 96707
Telephone: (808) 744-4850
Mobile Ph.: (808) 773-3477
Email: Tami.Avey@Gmail.Com

Attorney for Plain iff, Tami Avey
Pro Se

11