UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TAMI AVEY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CLEARBRIDGE TECHNOLOGY GROUP, LLC, OPTUM SERVICE - UNITED HEALTH GROUP,<br><br>　　　　　Defendants. | CIV. NO. 23-00025 LEK-KJM |

**ORDER GRANTING DEFENDANT CLEARBRIDGE TECHNOLOGY GROUP, LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND DEFENDANT OPTUM SERVE TECHNOLOGY & CONSULTING SERVICES INC.'S MOTION TO DISMISS PLAINTFF'S AMENDED COMPLAINT**

　　　　　Before the Court are: Defendant Clearbridge Technology Group, LLC's ("Clearbridge") Motion to Dismiss Amended Complaint, filed on October 9, 2023 ("Clearbridge's Motion"); [dkt. no. 36;] and Defendant Optum Serve Technology & Consulting Services Inc.'s ("Optum Serve") Motion to Dismiss Plaintiff's Amended Complaint, filed on October 24, 2023 ("Optum Serve's Motion"), [dkt. no. 45].  On October 10, 2023, pro se Plaintiff Tami Avey ("Avey") filed her response to Clearbridge's Motion, and on November 2, 2023, Avey filed her response to Optum Serve's Motion.  [Dkt. nos. 39, 47.]  The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local

Rules"). Clearbridge's Motion and Optum Serve's Motion are hereby granted for the reasons set forth below, and Avey's Amended Complaint, [filed 9/25/23 (dkt. no. 34),] is dismissed with prejudice.

## BACKGROUND

According to the Amended Complaint, during the period relevant to the instant case, Avey was an employee of Clearbridge. [Amended Complaint at pg. 2.] Clearbridge hired Avey in October 2020 to work for Optum Serve as a Senior Health IT Lead, but she was later informed that she would be the Regional Manager on a project called Operation Warp Speed. [Id. at pgs. 9-10.] Avey began serving as a Regional Manager of Optum Serve on November 3, 2020. [Id. at pg. 12.] "Clearbridge is a technology consulting and staffing services company that places individuals at a client/employer's place of business on a temporary or permanent basis. Clearbridge hires employees and works with its clients to place employees who can assist the client with its employment needs." [Clearbridge's Motion to Dismiss Complaint Filed on January 18, 2023 ("Clearbridge's First Motion"), filed 7/31/23 (dkt. no. 22), Declaration of Kathleen E. Hubbard ("Hubbard Decl.") at ¶ 3.[1]] Optum Serve is the federal health business of UnitedHealthGroup and helps

---

[1] Kathleen Hubbard is Clearbridge's Vice President of Human Resources. [Hubbard Decl. at ¶ 2.]

federal agencies by providing services assisting with the delivery of health care, health information and technology, healthcare operations and healthcare data and analytics. [Optum Serve Motion, Declaration of Peter J. Dickson ("Dickson Decl.") at ¶ 3.[2]] Operation Warp Speed was a federal contract Optum Serve entered into with the United States Department of Health and Human Services ("DHHS") to support production, distribution and administration of the Covid-19 vaccine. [Id. at ¶¶ 4-5.]

Optum Serve contracted with Clearbridge to provide contractors to help operate data systems to distribute and administer the Covid-19 vaccine. [Id. at ¶ 6.] Under the agreement between Clearbridge and Optum Serve, DHHS, the United States Department of Defense ("DOD"), Clearbridge, and Optum Serve could remove Clearbridge personnel from Operation Warp Speed, however only Clearbridge as the employer had the power to terminate an employee. In lieu of termination, Clearbridge could assign an employee to another contractor or company. [Id. at ¶ 10.]

Avey was the Regional Manager for Regions 9 and 10, which included Arizona, California, Hawai`i, Nevada, American Samoa, Guam, Micronesia, the Northern Mariana Islands, the Marshall Islands, Palau, Alaska, Idaho, Oregon, and Washington.

---

[2] Peter Dickson is an Optum Services, Inc. Senior Associate General Counsel. [Dickson Decl. at ¶ 1.]

3

[Id. at ¶ 11.]  Avey "was responsible for supporting all of the states in regions 9 and 10."  [Id.]  Avey resided in Hawai`i for the duration of her employment with Clearbridge.  [Amended Complaint at pg. 3.]  Avey also alleges Optum Serve employee Robert Burks informed her "she was only hired because she 'lived in Hawaii.'"  [Id. at pgs. 7, 14.]  Avey alleges she was in regular contact with her Clearbridge recruiters, Arthur Behrman ("Behrman") and Kevin Latraverse ("Latraverse"), regarding Avey's successes and concerns while serving as Optum Serve's Regional Manager.  [Id. at pg. 13.]

Avey alleges that, on January 15, 2021, she encouraged members of her regional team to commemorate Dr. Martin Luther King, Jr.  [Id. at pg. 34.]  Avey hosted a Dr. Martin Luther King, Jr. Black History Month event via videoconferencing.  [Id. at pg. 34.]  After this, Avey was racially marginalized and treated poorly on account of her being a Black woman by DOD liaison Colonel Sonmez, Christina Nguyen, Region 10 members, and Robert Burks.  [Id. at pgs. 34-59.]  On March 30, Avey informed Burks that she was going to file a grievance, which she proceeded to do.  Three hours later, she was terminated.  [Id. at pgs. 56-57.]  Avey alleges that Clearbridge and Optum Serve retaliated against her because of her protected activity of reporting the discrimination she was subjected to on account of her race and gender.  [Id. at pgs. 58-59.]  Avey alleges she

4

informed Clearbridge recruiter Behrman and Vice President of Human Resources Kathi Hubbard, prior to her termination, of the racial discrimination and retaliation she experienced. [Id. at pgs. 7-8.] Avey alleges Clearbridge did nothing to prevent her mistreatment. [Id. at pgs. 18-19.] Avey alleges a violation of 42 U.S.C. § 1981. [Id. at pgs. 62-64.] Avey requests damages, interest, attorneys' fees and costs, and any other appropriate relief. [Id. at pg. 66.]

Clearbridge and Optum Serve both seek dismissal of Avey's Amended Complaint due to lack of personal jurisdiction, and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2) and (6). [Clearbridge's Motion, Mem. in Supp. at 23-24; Optum Serve's Motion, Mem. in Supp. at 5-64.] Both argue the dismissal should be with prejudice. [Clearbridge's Motion, Mem. in Supp. at 4; Optum Serve's Motion, Mem. in Supp. at 23.]

## STANDARDS

### I. Personal Jurisdiction

In considering a motion brought under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, this Court has stated:

> A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant. See Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir. 2010); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff must establish personal jurisdiction over a defendant

5

> with respect to each claim. Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant." (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977))).
>
> When, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Love, 611 F.3d at 608; Schwarzenegger, 374 F.3d at 800. Although a plaintiff may not simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits or declarations must be resolved in the plaintiff's favor. See Love, 611 F.3d at 608; Schwarzenegger, 374 F.3d at 800.

Gallagher v. MaternityWise Int'l, LLC, CIV. NO. 18-00364 LEK-KJM, 2019 WL 961982, at *2 (D. Hawai`i Feb. 27, 2019) (citing Barranco v. 3D Sys. Corp., 6 F. Supp. 3d 1068, 1076 (D. Hawai`i 2014)). Further, Plaintiff must demonstrate that the Court has personal jurisdiction over each of the defendants. See Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of International Shoe [Co. v. Washington, 326 U.S. 310 (1945)], however, must be met as to each defendant over whom a state court exercises jurisdiction.").

In exercising personal jurisdiction, federal district courts are constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits.

6

See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021), Briskin v. Shopify, Inc., No. 22-15815, 2023 WL 8225346, at *3 (9th Cir. Nov. 28, 2023).  Hawaii's long-arm statute permits Hawai`i courts to assert personal jurisdiction to the extent permitted by the Due Process Clause.  See City & Cnty. of Honolulu v. Sunoco LP, 153 Hawai`i 326, 537 P.3d 1173 (2023); see also Yamashita v. LG Chem, Ltd., 152 Hawai`i 19, 21-22, 518 P.3d 1169, 1171-72 (2022).  Therefore, this Court will determine whether jurisdiction over each defendant comports with federal due process.

To comport with the Due Process Clause, a court may exercise personal jurisdiction over a defendant if the defendant has sufficient minimum contacts with the forum state "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Walden v. Fiore, 571 U.S. 277, 283 (2014) (some internal quotation marks omitted) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

> Personal jurisdiction can be either general or specific.  A court may exercise general jurisdiction "only when a defendant is 'essentially at home' in the State."  Ford Motor Co., 141 S. Ct. at 1024 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).  For a corporate defendant, general jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business.  See

7

>Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). . . .

Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1086 (9th Cir. 2023).

In order for a defendant to be "essentially at home" in the forum state, it must have "'continuous and systematic'" affiliations with the state. Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear, 564 U.S. at 919 (internal quotation omitted)). For general jurisdiction to exist, the defendant's "continuous and systematic general business contacts" must be so significant that they "approximate physical presence in the forum state." See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223-24 (9th Cir. 2011) (citations and internal quotation marks omitted). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011). (alterations in original) (some citations omitted) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 318, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic to establish general jurisdiction, a

8

district court must consider factors such as the defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006). "[T]he paradigm forum for the exercise of general jurisdiction is . . . for a corporation, . . . one in which the corporation is fairly regarded as at home." Goodyear, 564 U.S. at 924 (citation omitted).

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." Ford Motor Co., 141 S. Ct. at 1024. "Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum." Ratha v. Phatthana Seafood Co., 35 F.4th 1159, 1171 (9th Cir.) (brackets, quotation marks, and citation omitted), *cert. denied*, 143 S. Ct. 491 (2022).

## DISCUSSION

### I. General Personal Jurisdiction

The Court does not find the issue of whether general personal jurisdiction exists to be in serious dispute. Neither Clearbridge nor Optum Serve are domiciled in Hawai`i, and Avey has not established that either Clearbridge or Optum Serve has contacts in Hawai`i that are so continuous, systematic and substantial that general jurisdiction is warranted.

9

As to Clearbridge, Clearbridge's headquarters are in Alpharetta, Georgia and Billerica, Massachusetts, and Clearbridge does not have any offices or property in Hawai`i, nor does it conduct any business in Hawai`i.  [Amended Complaint at pgs. 1-2; Clearbridge's First Motion, Hubbard Decl. at ¶ 2.] Clearbridge's limited contacts with Hawai`i are not substantial, continuous, and systematic enough for this Court to exercise general jurisdiction over Clearbridge.  See Int'l Shoe, 326 U.S. at 318; King, 632 F.3d at 579.

As to Optum Serve, Optum Serve is incorporated in Maryland and its principal place of business is in Windsor Mill, Maryland.  It does not conduct business in Hawai`i and has no offices, building, or real estate in Hawai`i.  [Optum Serve Motion, Dickson Decl. at ¶¶ 13-15.]  Optum Serve's limited contacts with Hawai`i are not substantial, continuous, and systematic enough for this Court to establish general jurisdiction over Optum Serve.  See Int'l Shoe, 326 U.S. at 318; King, 632 F.3d at 579.

## II. **Specific Personal Jurisdiction**

There are three requirements to establish specific personal jurisdiction over a non-resident defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the

10

> defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Impossible Foods, 80 F.4th at 1086 (citation omitted). Avey bears the burden on the first two prongs, and if those prongs are met, each defendant must present a "compelling case" that the exercise of jurisdiction would not be reasonable. See id. at 1086-87 (citation and quotation marks omitted).

Beginning with the first prong of the test, Avey must establish that Defendants each either purposefully availed itself of the privilege of conducting activities in Hawai`i or purposefully directed its activities toward Hawai`i, or engage in some combination thereof. Impossible Foods Inc., 80 F.4th at 1088 (quotation omitted). Which test a court applies "turns on the nature of the underlying claims." Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 979 (9th Cir. 2021) (citation omitted). When a defendant's conduct primarily occurs outside the forum state, courts within the Ninth Circuit "generally apply the purposeful direction test and look to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." Impossible Foods Inc., 80 F.4th at 1088 (citation omitted). On the other hand, a purposeful availment analysis applies when "the defendant has taken deliberate action within the forum state or has created

11

continuing obligations to forum residents." Id. (alteration, quotation marks, and citation omitted).  "Thus, purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." Id. (brackets, quotation marks, and citation omitted).  Ultimately, both tests "simply frame our inquiry into the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Id. at 1089 (citation and internal quotation marks omitted).

As to Clearbridge's and Optum Serve's contacts related to Avey's employment, Avey notes that she resided in Hawai`i when Clearbridge recruiters contacted her, and she resided in Hawai`i for the duration of her employment.  [Amended Complaint at pgs. 2-3.]  During her employment, she was in regular contact with Clearbridge recruiters, Berman and Latraverse.  Further, Avey worked as the Regional Manager for Region 9, which included Hawaii; and Optum Serve's Deputy Director for Operation Warp Speed, Robert Burks, informed Avey that she was only hired because she lived in Hawai`i.  [Id. at pgs. 12-14.]

On the other hand, Clearbridge argues that specific jurisdiction cannot be based upon mere targeting an individual who happens to reside in the forum state, rather, Clearbridge

12

must have expressly aimed its conduct at Hawai`i itself, which it did not do.  Clearbridge argues the Amended Complaint does not allege any facts demonstrating Clearbridge committed an intentional act directed toward Hawai`i and not toward Avey: Clearbridge recruiters never travelled to Hawai`i, and the application and interview process was done remotely. [Clearbridge Motion, Mem. in Supp. at 16-20.]

Similarly, Optum Serve contends the agreement between Optum Serve and Clearbridge did not specify that Avey's position would be required to work in Hawai`i, and Avey was not selected for the position because she resided in Hawai`i.  Even if Avey was selected because she lived in Hawai`i, Optum Serve contends that Avey failed to state sufficient facts beyond mere knowledge Avey resided in Hawai`i, which is insufficient to establish minimum contacts.  [Optum Serve Motion, Mem. in Supp. at 13-15.]

Neither Clearbridge's nor Optum Serve's contacts with Hawai`i related to Avey's employment are substantial enough to demonstrate purposeful availment or purposeful direction.  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State," and that "relationship must arise out of contacts that the defendant **himself** creates with the forum State" rather than "with persons who reside there." Walden, 571 U.S. at 284-85 (emphasis in original) (citations and

13

internal quotation marks omitted).  The contacts needed to support specific jurisdiction "must be the defendant's own choice," rather than solely Avey's choice.  See Ford Motor Co., 141 S. Ct. at 1025.  Here, Defendants' contacts with Hawai`i were solely due to Avey's decision to live in Hawai`i.  Avey's choice to work in Hawai`i for her own reasons "is a unilateral decision that cannot be fairly attributed to the defendant[s] as an attempt to avail [themselves] of the privileges of conducting business in [Hawai`i]."  See Fields v. Sickle Cell Disease Ass'n of Am., Inc., 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018).[3]

In the context of remote workers, other district courts have ruled that the purposeful availment prong is satisfied when the defendant "knew the plaintiff lived within the forum and furthered its business within the forum."  See, e.g., Zarkesh v. Vinmar Polymers Am., LLC, CASE NO. C23-1002-JCC, 2023 WL 8089733, at *2 (W.D. Wash. Nov. 21, 2023).  However, Avey has not demonstrated that she furthered either Optum Serve's or Clearbridge's business within the State of Hawai`i.  Neither Optum Serve nor Clearbridge used facilities in Hawai`i, and Avey did not have any work-related reason to reside in Hawai`i.  No work meetings occurred in Hawai`i.  Cf. id.

---

[3] 376 F. Supp. 3d 647 was affirmed on appeal.  770 F. App'x 77 (4th Cir. 2019).

14

(finding that the plaintiff's allegations, collectively, were sufficient to establish purposeful availment because, in addition to being aware that she would work from Washington, the defendants alleged shipped products to Washington, stored products there, shipped some products within Washington, and employed at least one other person besides the plaintiff in Washington). Although Avey was a Regional Manager of fourteen different states or jurisdictions, one of which included Hawai`i, she was responsible for supporting all of the states within her regions, and her position was fully remote. [Optum Serve Motion, Dickson Decl. at ¶¶ 11-12.] Avey was not required to work from Hawai`i – it appears entirely incidental that Avey resided in Hawai`i. See id. at ¶ 12. Avey's injury - alleged discrimination and retaliation - is not tethered to Hawai`i, but "is entirely personal to [her] and would follow [her] wherever [she] might choose to live or travel." See Picot v. Weston, 780 F.3d 1206, 1215 (9th Cir. 2015); see also Grootonk v. Labrie Env't Grp., LLC, Case No. 8:22-cv-01868-FWS-ADS, 2023 WL 5420299, at *8 (C.D. Cal. July 20, 2023) (citing Picot, 780 F.3d at 1215) (holding a plaintiff alleging employment discrimination who resided in and was fired in California did not establish either purposeful direction or purposeful availment by her out-of-state employer). Avey's decision to work remotely in Hawai`i was a unilateral personal decision and is thus insufficient to

15

establish personal jurisdiction over Defendants.  See Lucachick v. NDS Americas, Inc., 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001) (holding plaintiff employee who made the "personal choice" to live in Minnesota while his employer's headquarters were in California does not support a finding of jurisdiction over employer).  The evidence only demonstrates Avey's unilateral activity occurred in Hawai`i and is insufficient to satisfy Avey's burden to show that Defendants each aimed its conduct at Hawai`i by discriminating against her or terminating her employment.

Therefore, the Court does not reach the second or third prongs of the personal jurisdiction analysis.  See Picot, 780 F.3d at 1213 n.2 ("Because Picot has failed to establish that Weston purposefully availed himself of the privilege of conducting activities in California, we need not address whether the suit arises out of Weston's forum-related activities, or whether the exercise of jurisdiction would be reasonable.").

Moreover, it is clear that Avey would not be able to cure the defect in her claims by amendment.  Dismissal will therefore be with prejudice.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018).  Because the Court concludes that it does not have personal jurisdiction over either Clearbridge or Optum Serve, the Court will not consider

16

their arguments that the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

On the basis of the foregoing, Clearbridge's Motion to Dismiss Amended Complaint, filed October 9, 2023, and Optum Serve's Motion to Dismiss Plaintiff's Amended Complaint, filed October 24, 2023, are HEREBY GRANTED.  Avey's Amended Complaint, filed September 25, 2023, is DISMISSED WITH PREJUDICE.  There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close the case on **December 28, 2023,** unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 13, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**TAMI AVEY VS. CLEARBRIDGE TECHNOLOGY GROUP, LLC, ET AL; CV 23-00025 LEK-KJM; ORDER GRANTING DEFENDANT CLEARBRIDGE TECHNOLOGY GROUP, LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND DEFENDANT OPTUM SERVE TECHNOLOGY & CONSULTING SERVICES INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**